UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
FRANKFORT DIVISION

IN RE:                                    )
                                          )
JUBILEE FARMS                             )        CASE NO.  18-30080-grs
                                          )        CHAPTER: 12
            DEBTOR                        )
_____   )

### RESPONSE IN OPPOSITION TO DEBTOR'S EMERGENCY MOTION FOR AN ORDER AUTHORIZING INTERIM USE OF CASH COLLATERAL, RELEASING FUNDS TO DEBTOR, AND PROVIDING ADEQUATE PROTECTION TO SECURED CREDITOR

COMES NOW, Farm Credit Mid-America, FLCA ("Farm Credit"), a secured creditor in this bankruptcy proceeding, by and through counsel, and for its Response in Opposition to Jubilee Farms' ("Debtor") Emergency Motion for an Order Authorizing Interim Use of Cash Collateral, Releasing Funds to Debtor, and Providing Adequate Protection to Secured Creditor (Docket No. 25 – "Cash Collateral Motion") states as follows:

1.      The Debtor filed its Petition seeking relief under Chapter 12 of 11 U.S.C. §101, *et seq*. (the "Code") on February 28, 2018 (the "Petition Date").  Two partners of the Debtor are principals in a related entity: Quickert Farms, LLC ("QF"), which likewise filed its Chapter 12 Petition on February 28, 2018 (case no. 18-30081).  On March 29, 2018, the Debtor filed its Motion to Administratively Consolidate Chapter 12 Cases [Docket No. 22], in which it asks to consolidate the above-captioned bankruptcy with the case styled *In re Quickert Farms, LLC*, case number 18-30081 pending in this Court.

2.      As of the Petition Date, the Debtor and QF (sometimes collectively referred to as the "Debtors"), Bobby Joe Quickert (individually), Jerry Quickert (individually) and Diane Quickert are jointly and severally liable to Farm Credit on nine (9) separate promissory notes

(collectively the "Farm Credit Notes").  In the Cash Collateral Motion, the Debtor indicates that its "debt to Farm Credit is approximately $2,735,549.00."[1]  (Cash Collateral Motion ¶8).  The Debtors' Schedules A/B reveal that the Farm Credit Notes are secured by the Debtor's interest in real property having a total appraised value of $826,650.00.[2]  Farm Credit is also secured by the Debtors' Farm Equipment and Machinery having an appraised value of $1,049,700.00.

3.   Farm Credit received proceeds from the sale of crops and crop insurance totaling $186,547.89 and a crop insurance check in the amount of $47,190.58 months before the Petition Date.  The Debtor refers to this as "Cash Collateral."

4.   In paragraph 13 of the Cash Collateral Motion, the Debtor states that "when Debtor sold its 2017 crop, all checks were made payable to Farm Credit in 2017."  The checks from the 2017 crop proceeds may have all been made payable to Farm Credit, but Farm Credit did not receive anything close to the amounts the Debtors realized from their 2017 crops (including crop insurance claims).

5.   According to the Debtors' Statements of Financial Affairs, the Debtors' farm income for 2017 was $587,393.00.  However, the Debtors have provided a detailed breakdown of farm income from 2017 crops, and according to their own computations, the Debtors received $379,437.27 from sales of 2017 crops and $187,406.00 from crop insurance claims for a total of only $566,843.27.

6.   Farm Credit received only $167,811.71 from sales of 2017 crops and $109,318.54 from 2017 crop insurance claims for a total of only $277,130.25.  *Thus, there is at least $289,713.02 from 2017 crops (including crop insurance) that was not received by Farm Credit*

---

[1] Farm Credit disputes the accuracy of this number, but will use this figure for purposes of the pending Cash Collateral Motion.

[2] In addition, Farm Credit is secured by real property owned by non-bankrupt obligors having a combined appraised value of $1,730,550.00.

*and is unaccounted for*.

7.      In paragraph 13 of the Cash Collateral Motion, the Debtor then mistakenly states that: "The crop proceeds exceeded the payments owed to Farm Credit in 2017."  This is untrue. One loan (having a principal balance of $603,375.80) had a payment due May, 2017. The Debtors did not make a payment on this loan in 2017.

8.      A second loan (having a principal balance of $850,000.00), matured on its own terms and became fully due and payable on July 1, 2017.  It is undisputed that the Debtors did not have sufficient funds from 2017 crops to repay the $850,000.00 loan when it matured on July 1, 2017.

9.      As the result of a lengthy effort in 2017 to work-out repayment of the two delinquent loans, Farm Credit agreed to restructure these two loans (together with three other loans) such that the payment due dates were extended to March 1, 2018, with subsequent annual payments to be due on March 1 for each year thereafter.  As consideration for the agreement by Farm Credit to restructure the delinquent loans, the Debtors tendered to Farm Credit the total sum of $139,282.39 from 2017 crop proceeds and crop insurance.  This money was placed in "Funds Held Accounts" where it was earmarked to be used solely to make the March 1, 2018 payments for the restructured loans.  The Debtors further tendered the sum of $65,465.10 from a crop insurance claim into an escrow account, from which Farm Credit paid an insurance premium on behalf of the Debtors in the amount of $18,351.08 and which contained $47,275.51 (the "Escrow Account") as of the Petition Date.

10.      Of the $277,130.25 received by Farm Credit from the Debtors' farming operations in 2017, only $72,382.68 was applied to the scheduled 2017 payments.[3]

---

[3] Farm Credit also received the sum of $49,374.01 from the sale of real property subject to a mortgage in the favor of Farm Credit.  This money was applied to four loans as full or partial 2017 payments.  In addition, Farm Credit

11.     The Debtor's Motion demands the return of $199,896.50 to fund a three month budget. This budget is solely for the purpose of planting the 2018 crop – it does not address the costs involved with harvesting the crop and getting the harvested soybeans to buyers. The Debtor does not disclose in its Cash Collateral Motion how money will be required to harvest the crop, pay crop insurance premiums, or to pay its landlords. According to the QF's Schedule G, there are 1,321 leased acres. The Debtors have not filed Motions to Assume the leases identified in QF's Schedule G. The Debtor has indicated that an additional $303,000.00 is needed for the following expenses:

| | |
|---|---|
| Crop Insurance: | $78,000.00 |
| Rent[4]: | $150,000.00 |
| Balance due for Seed: | $75,000.00 |

12.     The Cash Collateral Motion does not explain how the Debtor will pay for the $303,000.00 in harvest related expenses once the budgeted sums are exhausted. In the Debtor's Statement of Financial Affairs, the Debtor reports additional income from hauling grain and custom work for 2017 in the total amount of $113,410.00. Assuming similar income from this additional work in 2018, the Debtors will be short at least $189,590.00 to harvest their 2018 crops.

13.     By virtue of filing its Cash Collateral Motion, the Debtor considers the 2017 crop proceeds it asks Farm Credit to return constitutes "cash collateral" as that term is defined in the Code. In order to use cash collateral, the Debtor must provide Farm Credit with adequate protection. *In re Moore*, 465 B.R. 111, 114 (Bkrtcy.N.D.Miss. 2011). Admittedly, the Debtor offers a replacement lien on the 2018 crops in the Cash Collateral Motion. However, given the $189,590.00 shortfall in harvesting the crop, it is likely that the Debtors will not have sufficient

---

received $34,514.00 as the beneficiary of a co-obligor's life insurance policy. At the Debtor's request, $11,615.04 was used by the Bobby Quickert for crop insurance premiums for 2016, and $22,898.96 was applied to three loans.
[4] It is assumed (but not known for certain) that the Debtors will not lease the land owned by Louise Quickert (who is deceased).

funds to harvest the crops – leaving Farm Credit (and other creditors) with nothing to show for their 2018 advances unless they agree to advance additional funds.  As stated by the Court in *Miller, S.D., v. Wieseler*, 45 B.R. 871, 876 (D.S.D. 1985):

> In most cases, a bare replacement lien in non-existent crops will not be enough protection to allow a debtor to proceed on a cash collateral basis.  The debtor's standard in cash collateral cases is a high one.  To meet it, the debtors in the instant case must go beyond simply estimating what they hope they can harvest and what they hope the market can bring for it.

14.     The Debtor's Cash Collateral Motion does not provide expected yields, or any other projections.  Using the Debtors' 2017 crop numbers from their Statement of Financial Affairs, the Debtors' farming income and crop insurance claims totaled $587,393.00, but the information subsequently provided by the Debtor shows 2017 crop proceeds of only $566,843.27.  Regardless, the Debtors expect at least $502,896.50 in expenses.  The remaining funds ($84,496.50 in a best case scenario) would need to pay for the living expenses of the Debtors' principals, equipment payments to other creditors and the Debtors' attorneys' fees, Trustee fees and other expenses of administration.

15.     Assuming a crop yield similar to 2017, the Debtors would likely not have any money to pay Farm Credit on its $2,735,549.00 secured claim.  Moreover, the Debtors would be faced with the exact same financing issues for their 2019 crop that they face today.  They will need to dip into their 2018 crop proceeds to plant their 2019 crops.  In short, Farm Credit has all of the risk, without any upside.

16.     Furthermore, it is unclear how the Debtor will purchase seed, since the Debtor's own projections estimate that $75,000.000 will need to be financed.  The Debtors have not filed a separate motion to approve post-petition financing by a seed provider.  The Debtor previously purchased seed through Monsanto, but Schedules E/F for QF show that Monsanto is owed at least

$147,081.16. The Debtor's current Cash Collateral Motion makes no mention of what terms the Debtor will be forced to accept to induce Monsanto or another supplier to extend credit to the Debtors. Such financing could further erode Farm Credit's interest in the 2018 crop.

17. Finally, it should be noted that the Debtors have disclosed that Jerry Quickert has his own "private" farming operation which produced $103,864.10 in farm income in 2017. The Debtors propose using some acreage that will be leased to Jerry Quickert. It is unclear whether the crops grown on "Jerry's" leased property will be property of the Estate, or Jerry's crops. Farm Credit objects to any use of cash collateral for the payment of any expenses related to the "private" farming operations of any principals of the Debtors.

WHEREFORE, for the foregoing reasons, Farm Credit respectfully submits that the Cash Collateral Motion should be denied.

Respectfully submitted,

/s/ Anthony Raluy
Anthony Raluy
RENDIGS FRY KIELY & DENNIS, LLP
500 West Jefferson Street, Suite 1515
Louisville, Kentucky 40202
Phone: (502) 814-1121
Fax: (502) 371-2299
Email: traluy@rendigs.com
COUNSEL FOR FARM CREDIT

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing was this 4th day of April, 2018, served by electronic mail or regular mail upon the following:

Michael L. Baker
Chapter 12 Trustee
541 Buttermilk Pike, Suite 500
Post Office Box 175710
Covington, Kentucky 41017-5710

U.S. Trustee
100 E. Vine Street, Suite 500
Lexington, Kentucky 40507

Neil C. Bordy
Keith J. Larson
Seiler Waterman
2200 Meidinger Tower
462 S. 4th Ave.
Louisville, Kentucky 40202

/s/ Anthony Raluy
Anthony Raluy

7