UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
FRANKFORT DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| JUBILEE FARMS and | ) | CASE NO.  18-30080-grs |
| QUICKERT FARMS, LLC | ) | ADMINISTRATIVELY CONSOLIDATED |
| | ) | CHAPTER: 12 |
| DEBTOR | ) | |
| | ) | |

## OBJECTION TO CONFIRMATION OF
## PROPOSED CHAPTER 12 PLAN

Comes now, Farm Credit Mid-America, FLCA ("Farm Credit"), a secured creditor in this

bankruptcy proceeding, by and through counsel, and for its Objection to Confirmation of Debtors'

proposed Chapter 12 Plan filed on May 29, 2018 [Docket No. 58] (the "Plan") respectfully states

as follows:

1.      Jubilee Farms Partnership and Quickert Farms LLC (collectively the "Debtors")

filed their Petitions seeking relief under Chapter 12 of 11 U.S.C. §101, *et seq.* (the "Bankruptcy

Code") on February 28, 2018 (the "Petition Date").  On April 16, 2018, the Court entered an order

administratively consolidating Chapter 12 cases.

2.      Farm Credit is the holder of a secured claim by virtue of the following cross-

collateralized loans:

| Loan No. (Last 4 digits) | Purpose | Principal to Petition Date | Accrued Interest to Petition Date | Term |
|---|---|---|---|---|
| 3800 | Operating | $934,040.09 | $22,411.84 | 1 year |
| 2500 | Equipment | $57,003.39 | $2,019.03 | 6 years |
| 7400 | Equipment/ Vehicle | $7,544.14 | $63.37 | 6 years |
| 9300 | Equipment | $61,323.78 | $2,718.06 | 6 years |
| 5800 | Equipment/ Vehicle | $16,571.30 | $73.97 | 6 years |
| 2200 | Real Estate | $646,628.36 | $15,222.75 | 10 years |
| 0300 | Real Estate | $191,044.47 | $732.34 | 20 years |
| 0800 | Real Estate | $612,939.06 | $25,108.00 | 25 years |
| 5500 | Real Estate | $165,587.61 | $6,140.36 | 25 years |

3.    Farm Credit filed its secured Proof of Claim on April 29, 2018 [Claim No. 3] in the amount of $2,767,171.92

4.    On March 30, 2018, Jubilee Farms Partnership filed its Emergency Motion for an Order Authorizing Interim Use of Cash Collateral, Releasing Funds to Debtor, and Providing Adequate Protection to Secured Creditor [Docket No. 25] ("Cash Collateral Motion"), in which the Debtor sought, *inter alia*, the return of certain crop proceeds received by Farm Credit prior to the Petition Date which constituted Cash Collateral.

5.    The Cash Collateral Motion was resolved by an Agreed Order entered by the court on April 23, 2018 [Docket No. 46] (the "Cash Collateral Order") which required Farm Credit to return a portion of its Cash Collateral and Farm Credit was granted a super priority lien in any and all proceeds in the Debtors' 2018 crop in the amount of $152,705.94 ("Superpriority Lien").

6.    On May 29, 2018, the Debtors filed their Amendment to Official Form 207 [Docket No. 57] ("Amended Statement of Financial Affairs"). According to the Amended Statement of Financial Affairs, the Debtors dramatically reduced their reported 2017 crop income in their original Statement of Financial Affairs from $700,803.00 down to $385,104.92.

7.    On the same day they filed the Amended Statement of Financial Affairs, the Debtors filed their proposed Plan [Docket No. 58]. Notwithstanding their belated recognition of dramatically reduced income figures for their 2017 crop year, the Debtors optimistically predict annual gross revenues of $898,160.25, for each of the next five years in their Plan.

8.    Based on these projections, the Debtors' Plan proposes to pay Farm Credit's secured claim in annual payments over 20 years, plus interest at the rate of 5.5% per annum.

9.    Farm Credit objects to confirmation of the Debtor's Plan for numerous reasons, as the Plan does not comply with Section 1225 of the Bankruptcy Code.

10.     First, and foremost, the Debtors' proposed Plan should not be confirmed because it fails to satisfy the "feasibility" test of Section 1225(a)(6).[1]  The Debtors bear the burden of proving that their Plan is feasible and that the Debtors can make their payments going forward.  In re Perkins, 581 B.R. 822, 838 – 839 (B.A.P. 2018).  In Chapter 12 cases, courts look to the Debtors projected income and expenses in relation to the Debtor's actual past performance in making a determination as to whether a Plan satisfies the feasibility test.  In re Torelli, 338 B.R. 390, 397 (Bkrtcy. E.D. Ark. 2006).

11.     In the instant case, the Debtors projected income over the next five years is $898,160.25.   However, in the most recent year, the Debtors were only able to generate $385,104.92.  Thus, the entire Plan is predicated on successive years of doubled production.  The Debtors offer no explanation in the Plan or pleadings as to how the Debtors can consistently generate projected income more than double the Debtors' last farm year.  "Proving feasibility requires more than high hopes for potential success."  In re Penick, Case No. 17-20178, 2017 WL 3772620, *3 (Bkrtcy.E.D.Ky August 28, 2017).  Other courts have rejected speculative Chapter 12 plans which rely on production figures twice as large as the last crop year. *See, e.g.*, In re Crowley 85 B.R. 76, 79 (W.D.Wisc. 1988).

12.     The Debtors are no doubt reluctant to provide more information regarding their 2017 crop year and their predicted revenues going forward because they are cognizant that their farmland is especially vulnerable to flooding and other wet weather conditions, making their crop yields more dependent on dry weather than most soybean farms.  Predicting five years of dry weather is exceptionally bullish, and inappropriate for purposes of Plan confirmation.

---

[1] In pertinent part, Bankruptcy Code §1225(a)(6) provides that the Court shall confirm a plan if, among other elements, "the debtor will be able to make all payments under the plan and to comply with the plan."

13.     Further, the proposed Plan is not confirmable because the 20 year repayment period does not conform to Section 1225(a)(5).[2]  Although the Bankruptcy Code does not specify the maximum length of a repayment period for a secured claim in a Chapter 12 case, the feasibility provision in Section 1225(a)(6) and present value provision in Section 1225(a)(5) imply such limits.  Torelli, 338 B.R. at 397.  In considering extended repayment provisions, Courts require debtors to present evidence of customary lender practices and market standards for length of repayment of similar loans, or the secured creditor's preexisting contract length.  In re Rose, 135 B.R. 603 (Bkrtcy N.D. Ind. 1991); In re Torelli, 338 B.R. at 397.

14.     In the instant case, Farm Credit submits that customary lending practices, and current market standards do not support a 20 year repayment of a mixed operating line, mortgage loans and equipment loans.  It should be noted that six of the nine Farm Credit loans are on terms of ten or fewer years.

15.     Indeed, over the next 20 years, the equipment will depreciate (and likely have to be replaced).  The Debtors' projections are so tight that the Plan does not take into account the fact that the Debtors may have to replace some of its equipment over the next 20 years, and the costs of financing the same.  Moreover the Debtors do not reveal that the principals of the Debtors are 68 and 59 years old.  It is doubtful that the Debtors will be farming at their current levels *for the next twenty years* given the age of their principals.  The age of the Debtors' principals weighs heavy in considering the confirmability of a Chapter 12 Plan. See, e.g., Rose, 135 B.R. at 606.

16.     The extended repayment plan is especially mischievous because of the unusual structure of the Debtors' farming operations.  Specifically, Jerry Quickert has his "side" farming

---

[2] Section 1225(a)(5) of the Bankruptcy Code requires that for retained property, secured creditors either accept the plan (which Farm Credit does not), or the Plan provides that the secured creditor retain its lien securing the claim and "the value, as of the effective date of the plan, of property to be distributed by the trustee or the debtor under the plan on account of such claim is not less than the allowed amount of such claim."

operation named "Quickert Farms" which is purportedly not the same as Quickert Farms, LLC. The Debtors do not have a bright line separating Quickert Farms crops and revenues from Quickert Farms, LLC crops and revenues.  It is difficult, if not impossible, to police the entities to ensure that inputs or crops are not diverted to the non-bankrupt "Quickert Farms."

17.     The Debtors' Plan further violates Section 1225 because the proposed interest rate on Farm Credit's secured claim is insufficient given the inherent risk of non-payment over such a long term.  Perkins, 581 B.R. at 841, *citing* Till v. SCS Credit Corp., 541 U.S. 465, 479 – 408, 124 S.Ct. 1951, 1961 – 62, 158 L.Ed.2d 787 (2004).

18.     The Plan also fails to pay the Superpriority Lien of Farm Credit (which is a forced financier of the Debtors' 2018 crops), in addition to the annual payments proposed in the Plan. The Plan should provide that the first proceeds from the sale of 2018 crops should pay the Superpriority Lien (before or on equal priority as Administrative Claims) together with the annual payment due to Farm Credit on its Secured Claim.

19.     Finally, Farm Credit objects to confirmation because the Plan fails to pay Farm Credit's attorneys' fees even though Farm Credit is entitled to the same as an over secured creditor pursuant to Section 506(b).

Wherefore, for the foregoing reasons, Farm Credit respectfully submits that the confirmation of the Debtors' proposed Plan should be denied.

Respectfully submitted,

/s/ Anthony Raluy
Anthony Raluy
RENDIGS FRY KIELY & DENNIS, LLP
500 West Jefferson Street, Suite 1515
Louisville, Kentucky  40202
Phone: (502) 814-1121
Fax: (502) 371-2299
Email: traluy@rendigs.com
COUNSEL FOR FARM CREDIT
MID-AMERICA, FLCA

CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing was this 7th day of June, 2018, served by electronic mail or regular mail upon the following:

Neil C. Bordy
Keith J. Larson
Seiler Waterman
2200 Meidinger Tower
462 S. 4th Ave.
Louisville, Kentucky 40202

Michael L. Baker
Chapter 12 Trustee
541 Buttermilk Pike, Suite 500
Post Office Box 175710
Covington, Kentucky 41017-5710

U.S. Trustee
100 E. Vine Street, Suite 500
Lexington, Kentucky 40507

/s/ Anthony Raluy
Anthony Raluy

6

1849860