UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
FRANKFORT DIVISION

IN RE:                                    )
                                          )
JUBILEE FARMS and                         )        CASE NO.  18-30080-grs
QUICKERT FARMS, LLC                       )        ADMINISTRATIVELY CONSOLIDATED
                                          )        CHAPTER: 12
                    DEBTOR                )
_____ )

### HEARING BRIEF OF FARM CREDIT MID-AMERICA, FLCA ON OBJECTION TO CONFIRMATION OF DEBTORS' PROPOSED AMENDED CHAPTER 12 PLAN

Comes now, Farm Credit Mid-America, FLCA ("Farm Credit"), a secured creditor in this bankruptcy proceeding, by and through counsel, and for its Hearing Brief filed pursuant to the Court's Order Scheduling Evidentiary Hearing [Doc. No. 115] ("Scheduling Order") on the Debtors' Amended Chapter 12 Plan [Doc. No. 94], and Farm Credit's Objection to Confirmation of Amended Chapter 12 Plan [Doc. No. 101], respectfully states as follows:

1.      List of Witnesses Expected to be Called at Hearing:

a.      Michael Buckman, Senior Loan Account Officer, Farm Credit.  Mr. Buckman will testify as to the total outstanding pre-petition debt for the nine (9) outstanding obligations owed to Farm Credit ("Farm Credit Loans"), the terms of each of those outstanding Farm Credit Loans and the real and personal property pledged as collateral for the Farm Credit Loans owned by Jubilee Farms Partnership and Quickert Farms LLC (collectively the "Debtors"). Mr. Buckman will also testify as to amount of proceeds from the Debtors' 2017 crops as reported by the Debtors, Farm Credit's application of the proceeds from the Debtors' 2017 crops and subsequent return of $152,705.94 to the Debtors for use pursuant to the Agreed Order Approving Debtor's Emergency Motion for an Order Authorizing Interim Use of Cash Collateral, Releasing

Funds to Debtor, and Providing Adequate Protection to Secured Creditor [Doc. No. 46] ("Cash Collateral Order"), and the reported yields from the Debtors' 2017 crops, and net proceeds from crop insurance for 2017.

b.      Bobby Joe Quickert, Jubilee Farms and Quickert Farms, LLC.  Bobby Joe Quickert is expected to testify as to the Debtors' 2017 and 2018 yield and production figures. Bobby Joe Quickert is also expected to testify as to the Debtors' payment of 2018 expenses, and sources of funding for the 2018 crops.  Bobby Joe Quickert is also expected to testify as to the Debtors' income and expense projections for their farming operations for 2019 through the remaining term of the proposed Amended Plan in which the Debtors will not have the same amount of farm land available following the proposed auction of a portion of the farm land used by the Debtors.  Bobby Joe Quickert will further testify as to expected additional income through the life of the plan, such as custom work.

c.      Jerry Quickert, Jubilee Farms and Quickert Farms, LLC.  Jerry Quickert is expected to testify as to the Debtors' 2017 and 2018 yield and production figures.  Jerry Quickert is also expected to testify as to the Debtors' payment of 2018 expenses and sources of funding for the 2018 crops.  Jerry Quickert is also expected to testify as to the Debtors' income and expense projections for their farming operations for 2019 through the remaining term of the proposed Amended Plan in which the Debtors will not have the same amount of farm land available following the proposed auction of a portion of the farm land used by the Debtors.  Jerry Quickert will further testify as to expected additional income through the life of the plan, such as custom work.

d.      Shane Quickert. Shane Quickert is expected to testify as to the Debtors' use of his personal farmland for purposes of raising crops through the life of the proposed Chapter 12

Plan.  Shane Quickert is also expected to testify as to the source of funds used by him for expenses related to his personal crops, and the Debtors' crops.

e.      A representative of Consolidated Grain and Barge Co. or ADM Silver Grove may be called to testify to rebut testimony concerning the sale prices and proceeds from the Debtors' 2018 crops, and their condition.

f.      All lay witnesses identified in Debtors' own disclosures or Hearing Brief filed in response to the Scheduling Order.

g.      Any other witness necessary to rebut testimony or proof proffered by the Debtors.

2.      Issue in Question: Whether the Debtors' proposed Amended Chapter 12 Plan [Doc. No. 94] ("Amended Plan") fails the "feasibility" test of Section 1225(a)(6).

3.      Summary of what the evidence will tend to prove:

The Debtors filed their Petitions[1] seeking relief under Chapter 12 of 11 U.S.C. §101, *et seq.* (the "Bankruptcy Code") on February 28, 2018 (the "Petition Date").  The Debtors have stipulated that Farm Credit is the holder of a secured claim in the amount of $2,767,171.92, arising from the nine (9) cross-collateralized Farm Credit Loans evidenced by Notes executed by he Debtors, and co-makers Bobby Joe Quickert, Jerry Quickert and Diane Quickert, with terms varying from 1 year (Loan No. 3800), 6 years (Loan No.'s 2500, 7400, 9300, and 5800), 10 years (Loan No. 2200), 20 years (Loan No. 0300) and 25 years (Loan No.'s 0800, 5500).  (See, Proof of Claim filed on April 29, 2018 [Claim No. No. 3-1] and Joint Stipulations of Fact No. 1 to 22, Exh. A).  The parties also stipulate that the Farm Credit Loans are secured by UCC-1 Financing Statements on all of the Debtors' equipment, farm products and crops (including those growing or

---

[1] On April 16, 2018, the Court entered an order administratively consolidating Chapter 12 cases.

to be grown) their proceeds and mortgages on several parcels of real property, including 223.15 acres of their farm property ("Beasley/ Turners Property"). (Joint Stipulation of Fact No. 22, 44).

At issue is whether the Debtors' Amended Chapter 12 Plan satisfies the so-called "feasibility" test of Section 1125(a)(6). The evidence will show that the Debtors' actual historical crop yields and farm income are significantly lower than the projections relied upon by the Debtors to prove feasibility in their Amended Plan. The evidence will also show that the yield results for the 2018 crops already put the Debtors' projections in peril.

The evidence will show that even if the Debtors miraculously survive the first year of their proposed Amended Plan, the Debtors will be unable to make the plan payments going forward as the Debtors will: (a) be unable to pay the proposed "balloon" payment on Loan No. 3800, (b) have less acres to farm in 2019, but higher annual plan payments to secured creditors, and (c) have no source of funding for their 2019 crop inputs, fertilizer, chemicals, insurance and rents.

Specifically, the evidence will show that the 2018 crop proceeds will not result in a surplus needed to fund the 2019 crop inputs, fertilizer, chemicals and rents. The Debtors were unable to obtain post-petition financing from other sources, and they were only able to plant their 2018 crops through the use of $199,896.50 of Farm Credit's Cash Collateral pursuant to the Cash Collateral Order. As a result, Farm Credit was granted a super priority lien in any and all proceeds in the Debtors' 2018 crop in the amount of $152,705.94 ("Superpriority Lien"). (*See*, Joint Stipulation of Fact No. 32, 33). The evidence will show that the Debtors' current 2018 crop yield figures reveal that there will not be any additional funds left over after payment of the Superpriority Lien and Debtors' other secured creditors. Hence, the Debtors will have insufficient funds to put in their 2019 crop.

4

Finally, the evidence will show that the Debtors' proposed Amended Plan could result in Farm Credit receiving less than the full amount of its secured claim by way of a proposed auction of a portion of Farm Credit's collateral valued at $826,650.00.  (Joint Stipulation of Fact 41, 42 Exh. F and G). The auction terms include a reserve bid of payoff of five (5) Farm Credit Loans which will be approximately $832,494.80.[2]  (See, Amended Plan [Doc. No. 94] pg. 6 – 7; Affidavit of Mike Buckman ¶16).  Because the costs of sale (at least $50,000 assuming a 6% commission) will reduce the net value of what Farm Credit will receive, Farm Credit will be forced to accept less than the payoffs of these five (5) loans if the auction yields only the reserve bid.  The Debtors have already conceded that Farm Credit is oversecured.[3]  Since the loans are cross-collateralized by real and personal property worth significantly more than Farm Credit's secured claim, the five (5) loans to be paid through the auction will be effectively forgiven for less than their outstanding balances in violation of 11 U.S.C. §1225(a)(5)(B)(ii),

3.      <u>Case and Statutory Authority in Support of Farm Credit</u>:

Dubbed the "feasibility" test, Section 1225(a)(6) of the Bankruptcy Code provides that the Court shall confirm a plan if, among other elements, "the debtor will be able to make all payments under the plan and to comply with the plan."  The burden on the Debtors to prove that their Plan is feasible and that the Debtors can make their payments going forward.  <u>In re Perkins</u>, 581 B.R. 822, 838 – 839 (6th Cir. B.A.P. 2018).  A chapter 12 Debtor must show that "it is *probable*, not merely possible or hopeful, that the debtors can actually pay the restructured debt."  <u>In re Keith's Tree Farms</u>, 519 B.R. 628, 637 (Bkrtcy.W.D.Va 2014) *quoting* <u>In re Rape</u>, 104 B.R. 741, 748 – 9 (W.D.N.C. 1989) (Emphasis added.).  In Chapter 12 cases, courts look to the Debtors projected

---

[2] This figure includes $23,156.28 in default interest for the delinquent payments pursuant to the applicable loan documents.

[3] *See*, Debtor's Emergency Motion for an Order Authorizing Interim Use of Cash Collateral, Releasing Funds to Debtor, and Providing Adequate Protection to Secured Creditor [Doc. No. 25].

income and expenses in relation to the Debtor's actual past performance in making a determination as to whether a Plan satisfies the feasibility test.  In re Torelli, 338 B.R. 390, 397 (Bkrtcy. E.D. Ark. 2006), In re Stallings, 290 B.R. 777, 791 (Bkrtcy.D.Id. 2003) ("Clearly, Debtors' historical yields constitute the best evidence of the reliability of their plan's projection of production.").

During the course of these proceedings, the Debtors have given multiple gross farm income projections ranging from $790,162.25[4] down to $640,282.50 in the Amended Plan.  (Amended Plan [Doc. No. 94] Exh. A and B).  The Debtors have a penchant for overstating their crop yields. Before the Petition Date, the Debtors gave Farm Credit's Special Accounts Loan Officer, two printouts on January 4, 2018 in which the Debtors indicated that from the Debtors' 2017 soybean crop: (a) Jubilee Farms expected to receive $37,425.57 from the sale of 4,334 bushels of soybeans grown on 381 acres for an average yield of 11.4 bushels per acre, and (b) Quickert Farms, LLC expected to receive $342,011.70 from the sale of 36,306.33 bushels of soybeans grown on 1395 acres for an average yield of 26 bushels per acre.[5]  (See, Joint Stipulations of Fact No. 23, 24, Exh. B and C).  Despite these modest projections, the Debtors only tendered to Farm Credit total crop proceeds in the amount of $277,130.25 from their 2017 crops (including proceeds from crop insurance), $102,306.45 less than their projected crop proceeds exclusive of crop insurance.  (Joint Stipulation of Fact No. 27).

---

[4] See, proposed Chapter 12 Plan filed on May 29, 2018 [Docket No. 58] (the "Original Plan") in which the Debtors projected annual gross farm revenues of $790,162.25.

[5] Inaccuracies related to the 2017 crop income were carried forward into Jubilee Farms' original Schedules and Statement of Financial Affairs [Doc. No. 21] which reported revenue from farming for the 2017 crop year in the amount of $99,073.00, and the Schedules and Statement of Financial Affairs filed by Quickert Farms, LLC on March 23, 2018 [Case No. 18-30081, Doc. No. 22] which reported 2017 farm income as $488,320.00.  However, the Debtors' Amendment to Official Form 207 filed on May 29, 2018 [Docket No. 57] ("Amended Statement of Financial Affairs"), in which the Debtors reduced their reported 2017 farm income from $700,803.00 (in their original Statements of Financial Affairs) to $385,104.92.

Given the drop off in actual soybean proceeds from the reports submitted by the Debtors to Farm Credit, the final 2017 yield figures are even lower than the 11.4 – 26 bushel/acre originally predicted by the Debtors.  The Debtors expect to yield 35 bushels an acre in the projections.  (See, Amended Plan, [Doc. 94] Exh. A).  Thus, the entire Amended Plan is predicated on at least five (5) successive years of production and yields that are *at least two times higher than their most recent farm year*.  The Debtors offer no explanation in the Amended Plan as to how the Debtors can consistently generate income more than double the Debtors' last farm year – especially since the Debtors readily acknowledge a decrease in Soybean prices from last year, and (as discussed below) are already falling short of their projections for the current year.  "Proving feasibility requires more than high hopes for potential success."  In re Penick, Case No. 17-20178, 2017 WL 3772620, *3 (Bkrtcy.E.D.Ky August 28, 2017).  Other courts have rejected speculative Chapter 12 plans which rely on production figures twice as large as the last crop year. *See, e.g.*, In re Crowley 85 B.R. 76, 79 (W.D.Wisc. 1988).

It should be noted that the Debtor's shoestring budget prevents the Debtors from using best practices to maximize yields.  For example, the Debtors 2017 soybean yields were reportedly between 11.4 bushels and 26 bushels an acre.  (Joint Stipulation of Fact No. 24, 25, Exh. B and C).  These figures are well short of the 45.0 bushels per acre average for 2017 soybeans grown by farmers in Henry County as reported by the U.S. Department of Agriculture National Agricultural Statistics Service.  (*See*, Joint Stipulation of Fact No. 47, Exh. L - USDA NASS Soybean County Estimates – 2017).  Further evidence of the Debtors' inability to implement best practices and failure to meet projections can be found in the 2018 crop year.  The Debtors Amended Plan projected a corn crop yield of 150 bushels per acre, and 300 planted acres for a total of 45,000 bushels of corn.  (*See*, Amended Plan [Doc. No. 94] Exh. A – Income & Expense Projections pg.

2).  However, the Debtors were only able to harvest a total of 29,373.57 bushels of corn in 2018 *falling over 15,000 bushels short of their predicted corn yields*.  (Joint Stipulation of Fact No. 37, Exh. H).

The Debtors do not have sufficient farm storage, or ability to dry their crop, making them vulnerable to high moisture and mold which depress the net proceeds received by the Debtors when they sell their soybeans.  According to the USDA NASS statistics, Kentucky soybean prices for September, 2018 were $9.18 per bushel.  So far in 2018, the Debtors have sold 13,050.67 bushels of soybeans, for an average net price of $7.04 per bushel.  (Joint Stipulation of Fact No. 39).    Without significant storage capabilities, the Debtors are unable to enter into grain contracts and lock in prices, and they are vulnerable to excessive moisture conditions.  The Debtors simply do not have the resources to maximize yields – an absolute necessity for the tight plan they have constructed.

Assuming, *arguendo*, the Debtor's historical yields were not taken into consideration, the Debtor's Amended Plan lacks feasibility on several other fronts.  First, the Debtors' Amended Plan proposes to restructure $956,452.00 in debt (Loan 3800) so it is payable with 7.2% interest on a 15 year amortization in annual payments beginning on March 1, 2020 with a "balloon" coming due on March 1, 2025.  Assuming timely payments, the Debtors will need to pay $780,914.27 on March 1, 2025.  (See, Affidavit of Mike Buckman ¶17), and the Debtors offer no explanation or plan as to how they will pay off the balloon payment.  The Amended Plan should not be confirmed because the Debtors have failed to demonstrate that it is feasible they will make the balloon payment. *See, e.g.*, In re Melcher, 416 B.R. 666, 669 (Bkrtcy.D.Neb. 2009); In re Borg, 88 B.R. 288, 292 (Bkrtcy.D.Mont. 1988) (Court denied confirmation of chapter 12 plan that included 6 year balloon).

Further, the Debtors only provide one year of income and expense projections.  However, in their Amended Plan the Debtors propose to sell 223.15 acres of their farm property ("Beasley/ Turners Property") with the proceeds to be applied to several "short term" Farm Credit obligations. If the Beasley/ Turners Property is not sold prior to March 31, 2019, it will be auctioned off, thus ensuring that the Beasley/ Turners Property will not be used for 2019 crops.  (See, Amended Plan [Doc. No. 94] pg. 6 – 7).  Despite having 223 less acres to farm in 2019 than they are using in 2018, the Debtors do not provide income and expense projections for 2019 (or any other year thereafter) taking into account the loss of acreage.

The failure to provide income and expense projections for the 2019 crop year is inexplicable since the Debtors Amended Plan proposes completely different payments to secured creditors from their 2019 – 2025 crops.  On pages 7 – 9 of the Amended Plan, the Debtors propose to make the following payments to secured creditors from their 2018 crop proceeds:

| Creditor | Payment Date | Amount |
|---|---|---|
| *Administrative expense owed to FCMA for insurance proceeds* | March 1, 2019 | $15,000.00 |
| *Farm Credit Mid America – Loans 0300, 0800 and 5500[6]* | March 1, 2019 | $82,785.00 |
| *Farm Credit Mid America – Loan 3800 (Post Petition Interest to March 1, 2019)* | March 1, 2019 | $54,174.33 |
| *Farm Credit Mid-America – "Additional Payment"* | December 1, 2018 | $62,500.00 |
| *Class 3B Claim (Farm Credit Services of America PCA)* | December 1, 2018 | $36,605.11 |

---

[6] The Debtors state that the Long Term Loans will be "paid according to their current terms."  (*See*, Amended Plan pg. 7)  However, the Debtors did not make the annual payment due on the Long Term Loans during 2018, since funds earmarked for those loans were returned to the Debtors as part of the Cash Collateral Order).  It is assumed that the money needed to bring the Long Term Loans current, which is at least $82,785, plus default interest (*See*, *In re New Investments, Inc*., 840 F.3d 1137, 1142 (9th Cir. 2016); *In re Dow Corning Corp*., 456 F.3d 668, 673 (6th Cir. 2006)), constitutes the "Additional Payment" described in the third full paragraph of pg. 7 of the Debtors' Amended Plan.

| | | |
|---|---|---|
| *Class 3C Claim (John Deere)* | December 1, 2018 | $43,592.11 |
| Total | | $294,656.55 |

The Debtors propose to sell 223.15 acres of their farm property ("Beasley/ Turners Property") in their Amended Plan with the proceeds to be applied to five (5) "short term" Farm Credit obligations.[7] (These are not the four (4) loans which the Debtors propose to make annual payments through their plan.)  Beginning with the 2019 crop year, the Debtors will make the following payments to secured creditors:

| Creditor | Payment Dates | Amount |
|---|---|---|
| *Farm Credit Mid America – Loans 0300, 0800 and 5500* | Mar. 1, 2020 - | $82,785.00 |
| *Farm Credit Mid America – Loan 3800* | Mar. 1, 2020 - 2025 | $103,914.27 |
| *Farm Credit Mid-America – "Additional Payment"* | December 1, 2019 | $62,500.00 |
| *Farm Credit Services* | Dec. 1, 2019 – 2023 | $36,605.11 |
| *John Deere* | Dec. 1, 2019 – 2023 | $43,592.11 |
| Total (for 2019 crop year) | | $329,396.49 |

The Debtors fail to explain how they will be able to make the higher plan payments in 2019 with 10% less total acreage to farm.  Assuming that their gross income numbers should decline by 10%, along with their expenses (since they are farming 10% less acreage), their year two projections should have total income of $684,254.00, and total expenses of $545,489.10, leaving $138,764.90 to pay secured debt.  As outlined above, the payments to secured creditors in 2019

---

[7] Specifically, the Debtors propose to auction the Beasley/ Turners' Station Property with a reserve based on principal and accrued interest on Loan No. 2500, Loan No. 7400, Loan No., 9300, Loan No. 5800 and Loan No. 2200.  (See, Amended Plan [Doc. No. 94] pg. 7).

will be $331,825.94, almost $200,000 more than can be expected from the Debtors' crop proceeds. The Amended Plan simply does not cash flow beyond the 2018 crop.

Further undermining feasibility is the lack of funds available for the Debtors to fund their 2019 crop. The Debtors' current projections assume that they will have available $101,597.80 to fund their 2019 crops. (See, Amended Plan, Exh. A [Doc. 94-1] pg. 2). However, the Amended Plan projections ignore the interest only payment on Loan No. 3800.[8] When that is factored in, only $47,597.80 remains for use in 2019. Additionally, the proceeds from the sale of the Debtors' 2018 corn crop are only $84,600.58, which is $49,949.42 less than budgeted. (Joint Stipulation of Fact No. 37). The Debtors' likely will be unable to even make the first year plan payments, and will not have any additional funds left over. Because the Debtors could not find sufficient post-petition financing, the Debtors needed Farm Credit to release $199,896.52 of its pre-petition Cash Collateral in order to plant their 2018 crop. (*See*, Cash Collateral Order [Doc. 46] ¶7). The Debtors will not have any funds available to them to plant their 2019 crop.

The Amended Plan is further objectionable because the Debtors propose to sell the Beasley/ Turners Property by auction with a reserve bid if they cannot otherwise sell it through a realtor before March 31, 2019. The reserve bid "shall equal the total amount that remains due and owing on loan numbers 2500, 7400, 9300, 5800, and 2200." (See, Amended Plan [Doc. No. 94] pg. 7). The combined appraised value for the Beasley/ Turners Property is $826,650.00. (Joint Stipulation of Fact No.'s 41, 42, Exh. F and G). Because the Debtors will not have made any payments on loan numbers 2500, 7400, 9300, 5800, and 2200 for over two years, the outstanding balance on

---

[8] It is assumed that the projections in Exhibit A to the Amended Plan are also incorrect because they fail to pay the Superpriority Lien of Farm Credit which is $152,705.94. Using the projections in the Debtors' Exhibit A to the Amended Plan, Farm Credit would receive secured payments in the amount of $145,285.00. The Amended Plan would need to provide, at a minimum, that the first proceeds from the sale of 2018 crops should pay the Superpriority Lien (before or on equal priority as Administrative Claims), plus the $20,000 insurance proceeds from the casualty loss for a total of $172,705.94.

these loans will be $832,494.80 as of March 31, 2019.  (Affidavit of Michael Buckman ¶16).

Assuming the auction costs are at least 6% (or $50,000.00), the reserve bid will be substantially

more than the appraised value of the Beasley/ Turners' Property, in essence forcing Farm Credit

to accept less than what is owed to it on Loan Numbers 2500, 7400, 9300, 5800, and 2200.  Since

these loans are "cross-collateralized," and the Debtors concede that there is equity in the collateral

securing Farm Credit's Loans, the Amended Plan violates 11 U.S.C. §1225(a)(5)(B)(ii) because it

forces Farm Credit to accept an amount less than a full payoff on its secured claim.

Finally, Farm Credit objects to confirmation because the Amended Plan fails to pay Farm

Credit's attorneys' fees even though Farm Credit is entitled to the same as an over secured creditor

pursuant to Section 506(b).

Respectfully submitted,

/s/ Anthony Raluy
Anthony Raluy
RENDIGS FRY KIELY & DENNIS, LLP
500 West Jefferson Street, Suite 1515
Louisville, Kentucky  40202
Phone: (502) 814-1121
Fax: (502) 371-2299
Email: traluy@rendigs.com
COUNSEL FOR FARM CREDIT
MID-AMERICA, FLCA

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing was this 13th day of December, 2018, served by electronic mail or regular mail upon the following:

Neil C. Bordy  
Keith J. Larson  
Seiler Waterman  
2200 Meidinger Tower  
462 S. 4th Ave.  
Louisville, Kentucky 40202  

U.S. Trustee  
100 E. Vine Street, Suite 500  
Lexington, Kentucky 40507

Michael L. Baker  
Chapter 12 Trustee  
541 Buttermilk Pike, Suite 500  
Post Office Box 175710  
Covington, Kentucky 41017-5710

/s/ Anthony Raluy  
Anthony Raluy