**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
FRANKFORT DIVISION**

| | |
|---|---|
| IN RE | |
| JUBILEE FARMS, and<br>QUICKERT FARMS, LLC | CASE NO. 18-30080<br>ADMINISTRATIVELY CONSOLIDATED |
| DEBTORS | |
| | CHAPTER 12 |

**MEMORANDUM OPINION AND ORDER**

Jubilee Farms and Quickert Farms, LLC seek confirmation of their Amended Chapter 12 Plan. [ECF No. 94.] The Chapter 12 Trustee, Farm Credit Mid-America, FLCA ("FCMA"), and Farm Credit Services of America, PCA ("FCS") object. [ECF Nos. 101, 104, and 107.] FCS also asks for relief from the automatic stay. [ECF No. 108.] An evidentiary hearing was held on December 20, 2018, to address whether the plan is feasible. The matter was then taken under submission. The Debtors failed to prove their proposed plan is feasible beyond March 2019, so the proposed plan is not confirmable.

**I.    FACTS.**

    **A. The Jointly Consolidated Debtors.**

The Debtors filed for chapter 12 relief on February 28, 2018. Michael L. Baker was appointed Chapter 12 Trustee. [ECF No. 3; ECF No. 18-30081, ECF No. 3.] The cases were administratively consolidated on April 16, 2018. [ECF No. 34; Case No. 18-30081, ECF No. 28.]

Debtor Jubilee Farms is a family farming partnership operated by two brothers, Bobby Joe Quickert and Jerry Quickert. Debtor Quickert Farms, LLC is a limited liability company that

1

is owned equally by the Quickert brothers. The Debtors grow and harvest soybean and corn primarily in Henry County, Kentucky. They also generate additional income from custom trucking and combining.

The Debtors primarily finance their farming operations through FCMA. FCMA filed Proof of Claim No. 3 for $2,767,171.92 based on nine promissory notes owed by the Debtors, Jerry Quickert, Bobby Joe Quickert, and Diane B. Quickert. [ECF No. 131 ¶¶ 1-21.] The debt is secured and cross-collateralized by the Debtors' crops, agricultural chemicals, agricultural supplies, equipment, fixtures, and real estate located in Henry County. [*Id.* ¶ 22.] The parties agree that FCMA is fully secured. [*Id.* ¶¶ 22-44, ECF No. 139.]

FSA filed Proof of Claim No. 2 for $182,419.83 secured by a judgment lien arising from a judgment against Jubilee Farms and Bobby Joe Quickert. The judgment debt arose from two promissory notes secured by certain farm equipment. [Proof of Claim 2-1 at 4-6.]

**B. Actions Taken to Support the Debtors During Bankruptcy.**

On April 23, 2018, FCMA and the Debtors reached an agreement to allow the Debtors to use $152,705.94 of cash collateral for operations in exchange for a superpriority lien on all proceeds from the 2018 crop. [*See* ECF No. 46 at 5.] The Agreed Order also directed FCMA to release $47,190.58 held in an escrow account to the Debtors and recognized the validity of FCMA's liens. [*Id.* at 4-5.]

In May 2018, the Debtors were granted permission to obtain $125,000.00 in post-petition financing from insiders Jerry Quickert and Shane Quickert, the son of Bobby Joe Quickert, to purchase additional seed. [ECF No. 53.] On October 19, 2018, the Debtors were granted permission to incur an additional $40,000.00 in debt to lease a combine harvester to gather their 2018 crop. [ECF Nos. 96, 102.]

In June 2018, the Debtors agreed to pay $2,000.00 per month to FCS in pre-confirmation adequate protection payments to resolve a pending motion for relief from stay. [ECF No. 76.] The Debtors admitted they have not made the adequate protection payments in recent months and will make up the payments on the effective date of a confirmed plan.

### C. The Amended Chapter 12 Plan.

On May 29, 2018, the Debtors filed a joint chapter 12 plan. [ECF No. 58.] The plan drew several objections [ECF Nos. 61, 63, and 64], so the parties were granted additional time to negotiate and amend the plan. [*See* ECF No. 73].

An amended chapter 12 plan was filed on October 11, 2018. [ECF No. 94.] The amended plan provides for periodic payments to the secured creditors funded primarily by the Debtors' farming income and supplemented by custom trucking and combining revenue. [ECF No. 94, Exh. A.] Additional funding in the first year will come from crop insurance and anticipated federal aid for farmers affected by recent political activity upsetting foreign crop sales. [ECF No. 131 ¶¶ 30-40.]

The amended plan provides that FCMA shall have a fully secured claim of $2,767,171.92, which the Debtors propose to pay as follows:

- The Debtors will pay Loan Numbers x2400, x7400, x9300, x4800, and x2200 (a total of $776,711.63) by private sale or auction of two pieces of real estate on or before March 31, 2019;

- The Debtors will pay Loan Numbers x0300, x0800, and x5500 according to their current terms, including interest, in the approximate amount of $82,785.00 per year;

- Loan Number x3800 is re-amortized over 15 years with the interest rate increasing to 7.2% per annum on March 1, 2019, and the Debtors propose to make payments of approximately $106,343.72 on March 1 of each year until a balloon payment is due on March 1, 2025; and

- The Debtors will make an additional payment of $125,000.00 to FCMA in two equal installments on December 1, 2018 and 2019. [ECF No. 94 at 6-7]

The Debtors propose to treat FCS's claim as fully secured in the amount of $182,419.82. The Debtors propose to pay the claim over six years at an interest rate of 5.5% in annual installments beginning on December 1, 2018, with the final payment due on December 1, 2023. The estimated annual payment is $36,605.11. [*Id.* at 8.] Based on delays affecting confirmation, the December payments will occur on or about the effective date of the confirmed plan.

FCMA, FCS, and the Chapter 12 Trustee object to confirmation of the amended plan. FCMA argues that the amended plan is not feasible pursuant to 11 U.S.C. § 1225(a)(6) because the Debtors' one-year income and expense projections are limited and unrealistic compared to the Debtors' historical income and expenses. [ECF No. 101.] FCMA further takes issue with the proposed real estate auction and balloon payment. [*Id.*]

FCS objects to: (1) the proposed 5.5% interest rate; (2) language in the plan that calls for the release of its lien where its judgment lien extends to a non-filing co-defendant; and (3) the Debtors' failure to make their post-petition adequate protection payments. [ECF No. 107.] FCS seeks relief from the automatic stay on similar grounds. [ECF No. 108.]

The Chapter 12 Trustee objects to the proposal to make payments directly to FCMA. [ECF No. 104.] The Chapter 12 Trustee also objects to the Debtors' failure to address the joint and several liabilities of the Jubilee Farms' partners in the plan. [*Id.*]

The parties jointly stipulated to the exhibits and the exhibits are deemed admitted. [ECF Nos. 131, 134.] Bobby Joe Quickert, a member and partner of the Debtors, testified by affidavit on the Debtors' behalf as to the feasibility of the plan. [ECF No. 122.] Michael Buckman, a

4

Special Accounts Loan Officer in charge of the Debtors' loans with FCMA, also testified by affidavit. [ECF No. 123.]

FCMA's objections to Quickert's affidavit [ECF No. 132] were orally overruled at the December 20 hearing without prejudice. Quickert and Buckman were subject to cross-examination and provided rebuttal testimony. Substantive objections were received and addressed during testimony. Upon closing of the evidence, the issue of feasibility was taken under submission. Rulings on the other objections and stay relief were deferred pending a ruling on the feasibility of the plan.

II.  ANALYSIS.

### A. The Debtors Bear the Burden to Prove Feasibility of the Proposed Plan.

A court shall confirm a chapter 12 plan if certain requirements are met, including proof that "the debtor will be able to make all payments under the plan and to comply with the plan." 11 U.S.C. § 1225(a)(6). This is the feasibility test. A chapter 12 plan is considered feasible if the court finds a "reasonable assurance of success," which is established when the plan offers a "realistic and workable framework for reorganization." *In re Perkins,* 581 B.R. 822, 839 (B.A.P. 6th Cir. 2018) (quoting *Gen. Elec. Credit Equities, Inc. v. Brice Rd. Developments L.L.C. (In re Brice Rd. Developments, L.L.C.*), 392 B.R. 274, 283 (B.A.P. 6th Cir. 2008)).

A debtor bears the burden of proof that a chapter 12 plan is feasible. *In re Chambers*, No. 08-31399, 2008 WL 5649690, at *5 (Bankr. E.D. Tenn. Nov. 20, 2008); *In re Lockard*, 234 B.R. 484, 490 (Bankr. W.D. Mo. 1999). The evidence in contested confirmation hearings usually presents a close and difficult decision. This case is no exception. The Debtors provided sufficient proof, barely, that they can make the operating and plan payments required in or before March 2019. The Debtors did not prove, however, that they can cover operational expenses and

plan payments due thereafter.  This conclusion is primarily drawn from the jointly stipulated evidence, making it even harder to find a way to expect successful operations.

### B. The Debtors Did Not Prove Feasibility Beyond the First Payments Required by the Proposed Plan.

#### 1. The Debtors Can Make the Initial Payments Due Under the Plan.

The record, the testimony, and the discussion and argument after the evidentiary hearing indicate the Debtors will likely have sufficient receipts to make payments due on or before March 2019.  The evidence that allowed this conclusion was sparse in many areas and at times speculative.  For example, the Debtors did not support Quickert's testimony with invoices or receipts regarding the combining and trucking work.  Also, there is no direct proof of the amount of the anticipated crop insurance payments.

But debtors are not required to guarantee "the ultimate success" of their plan; they only need "to provide a reasonable assurance that the plan can be effectuated, and that reasonable assurance must rise above 'bare agronomic feasibility.'" *In re Wilson,* 378 B.R. 862, 891 (Bankr. D. Mont. 2007) (quoting *Miller v. Nauman (In re Nauman),* 213 B.R. 355, 358 (B.A.P. 9th Cir. 1997)).  "The test is whether the things which are to be done after confirmation can be done as a practical matter under the facts." *Lockard,* 234 B.R. at 492 (quoting *Clarkson v. Cooke Sales and Service Co. (In re Clarkson),* 767 F.2d 417, 420 (8th Cir. 1985)).

If the Debtors only had to prove they could make the payments required by March 2019, the Debtors would prevail.  The testimony created a reasonable belief that the receipts necessary to make these payments have or will soon occur.  Further, even if this conclusion is wrong, FCMA would suffer little harm.  If the payments do not happen as predicted, then the plan would

quickly fail and FCMA could pursue its rights as a secured creditor with only a few months' delay. But more is required from the Debtors.

### 2. The Debtors Did Not Satisfy Their Burden to Prove They Can Make their Monetary Obligations After March 2019.

The Debtors also had to, but did not, show they can survive after the initial payments in early 2019. The only projection in the proposed plan is at Exhibit A. [ECF No. 94, Exh. A.] The Debtors provided additional revenue projections in their trial brief. [ECF No. 121 at 3.] The testimony regarding components of these calculations was not always clear or fully developed.

This opinion draws information from the record to evaluate the components of the Debtors projected revenue and payment obligations after March 2019. The Debtors must suffer any deficiencies in the inferences drawn as the party with the burden of proof. The evidence requires a conclusion that the Debtors' projections overstate revenue from soybean production during the 2019 crop year. After adjustment, the Debtors' anticipated receipts do not cover the Debtors' obligations to pay operating expenses and plan payments due in the future.

#### a. The Debtors' Projected Operating Expenses Require Adjustment.

The Debtors must provide reasonable assurance they can make all payments required, which includes operating expenses and proposed plan payments. Attachment 1 is a calculation of the cash payments required from April 2019 to March 2020. The plan payments are taken directly from the terms of the proposed plan.

The Debtors' projection of operating expenses is set out on Exhibit A to the proposed plan. [ECF No. 194, Exh. A.] The projections only extend one year and do not indicate a clear beginning or end date. It is assumed these expenses are for a 12-month period and they are used for the fiscal year beginning April 2019. The Debtors also explained during testimony the

expense projections do not account for reduced costs after the anticipated sale of approximately ten percent of their farmland in the first half of 2019. Therefore, the operating expenses on Exhibit A require adjustment.

Attachment 1 shows the recalculation of operating expenses. The Debtors' projected expenses are accepted as true, despite limited testimony. Most expenses are reduced by 10% to account for the contemplated sale of farmland. The 10% reduction was not applied to rent obligations because leased land is not part of the sale. Also, the parties agreed in post-hearing arguments to the anticipated cost of seed for the 2019 crop year, so that amount is used.

The evidence presented supports a conclusion that anticipated payment obligations will at least equal $872,000.00 between April 2019 and March 2020, as shown on Attachment 1.

### b. The Evidence Does Not Support the Revenue Predicted by the Debtors.

The Debtors revenue projections in its trial brief have four components: soybean production; corn production; combining; and trucking. The projected revenue from combining is $60,000.00 and from trucking is $48,000.00. Quickert's testimony regarding these components of revenue was not backed up by invoices, receipts or other evidence. Also, FCMA raised some doubt that the Debtors would achieve these results in the current year. Despite these concerns, the Debtors are given the benefit of the doubt regarding the anticipated income from combining and trucking for the analysis of 2019-20 revenue.

The crop revenue is based on the acreage planted, the estimated bushels per acre, and an estimated sale price per bushel. The acreage is not disputed. In 2019, the Debtors expect to plant 1,755 acres of soybeans and 270 acres of corn. Also, the parties focused their attention on

the soybean crop estimates, so the return on the corn crop is assumed correct for the analysis of 2019-20 revenue.

### i. The Estimated Bushels per Acre Used in the Calculation of Projected Soybean Revenue Is Too High.

The Debtors projections in the trial brief assume a recovery of 35 bushels per acre, which is not supported by the record. According to Buckman, a high-yield farm is 50-60 bushels per acre and 23-25 bushels per acre is a low yield. Buckman further testified that the Debtors' farms historically have a lower yield based on their low-lying location near the Kentucky River, which makes the land prone to flooding. Buckman's testimony and cross-examination of Quickert also confirmed the Debtors' financial situation limits the Debtors' ability to use best practices, such as storage and drying techniques that would ultimately result in a higher yield per acre.

The only evidence that supports a 35 bushel-per-acre yield comes from Quickert's testimony that it is the historical average used for this year's crop insurance calculation. It is likely this number will decrease in future years. It is based on average production over the past seven years, with the highest and lowest years excluded. The Debtors suffered two bad years in 2017 and 2018, but any future calculation will only exclude one of those years.

Also, the payment is reduced by 80%, so the recovery for crop insurance purposes is based on 28 bushels per acre. This amount is the highest bushel per acre return that has any support from the record. Further, it seems more reasonable to expect a lower output based on the totality of the evidence.

The actual bushels per acre has decreased over the past several years. Buckman testified that he reviewed the actual production history of the Debtors relied on by the crop insurer to

determine the Debtors' average yield for soybeans was 31.1 and 26.6 bushels per acre in 2015 and 2016, respectively. It was not clear whether this testimony focused on the crop insurance guarantee or the actual harvest. Still, this is the best information available for these years because Quickert said he could not recall any production information from 2015 and 2016.

The parties stipulated that the 2017 yield for soybeans in Henry County, Kentucky, was 45 bushels per acre. [ECF No. 131 ¶ 47.] But both Quickert and Buckman agreed the Debtors' yield per acre is less than that average. The stipulations confirm Jubilee Farms recovered only 11.4 bushels per acre in 2017. [ECF No. 131, Exh. B.] A similar projection for Quickert Farms suggested the Debtors would recover 26 bushels per acre [*Id.*, Exh. C], but Quickert acknowledged on cross-examination the actual result was closer to 8 bushels per acre because the revenue was grossly overstated. While these results are substantially discounted in this analysis due to excessive rainfall in 2017, they also do nothing to support the higher numbers used by the Debtors' projections.

Cross-examination of Quickert also suggested the Debtors achieved 23.5 bushels of soybeans per acre in 2018. Quickert said this number would only decrease when the additional soybean crop is harvested because the yield goes down the longer the crop is left in the ground.

Based on this review, an estimate of the yield from the soybean crop that is supported by the record is a range of 23.5 bushels per acre to 28 bushels per acre.

        ii.    **The Price Per Bushel Used in the Debtors'
Projections Is Too High.**

The information available for the price per bushel of soybeans is similarly rough. The Debtors' first projection uses $10.01 as the price per bushel of soybeans. The trial brief says this is the May 2018 price for a bushel of soybeans, citing to the revenue projection in its initial plan.

[ECF No. 58, Exh A.]  But the original plan and projection do not contain any proof or other explanation of the source of this price.  It might represent an average price for the Debtors, Henry County farmers, Kentucky farmers, or even all soybean farms in the United States.

The second projection uses the 2016 average price per bushel of soybeans in Kentucky of $9.87.  This amount was stipulated by the parties.  [ECF No. 131 ¶ 48.]  Using an average for Kentucky from 2016 does not work for several reasons.  The evidence confirms the Debtors' farms do not perform as well as other farms in Henry County.  Also, as noted previously, Quickert could not recall any information regarding the Debtors' actual results in 2016.

The Joint Stipulations also do not support use of the 2016 Kentucky average because they show a downward trend in the price of soybeans from all sources.  The parties stipulated that the average price per bushel of soybeans in Kentucky was $9.87 in 2016, $9.24 in 2015, $10.50 in 2014, $13.10 in 2013, and $14.50 in 2012.  [*Id.* ¶ 48.]

The parties also stipulated that the average price per bushel of soybeans sold in the United States in September 2017 was $9.35 and $8.77 in September 2018.  [*Id.* ¶ 45.]  The average price per bushel of soybeans sold in Kentucky in September 2017 was $9.53 and $9.18 in September 2018.  [*Id.* ¶ 46.]  The information available for the actual results in 2017 confirms a downward trend.  The stipulations show Jubilee Farms recovered 11.4 bushels per acre in 2017 for an average price of $8.64.  [*Id.*, Exh. B.]  Based on the adjusted recovery of 8 bushels per acre for Quicker Farms in 2017 discussed previously, cross-examination put the per bushel price at $9.00.

The actual results for the Debtors in 2018 were lower.  The Debtors sold a total of 13,050.67 bushels of soybeans through December 1, 2018, at prices ranging from $7.87 to $7.96 per bushel.  [*Id.* ¶ 39.]  After deductions for moisture, damage, and hauling, the Debtors received

11

an average net price of $7.04 per bushel. [*Id.*] An entitlement from the Federal Market Facilitation Program raises the net per bushel sale price to $7.86. [*Id.* ¶ 40.]

The Debtors projections using May 2018 prices and the 2016 average price for Kentucky are not supported by the evidence presented. The information reviewed, most of which comes from the Joint Stipulations, confirms prices of $7.87 to $9.53 per bushel of soybeans is a reasonable range. Also, the lower amount seems more likely, giving no room to raise the high end of the range.

### III.   CONCLUSION.

It is found that the proposed plan is not feasible. Attachment 2 compares the Debtors' projections from the trial brief to calculations using the yield and price per acre that are supported by the record. The results show the Debtors can only pay anticipated operating expenses and plan payments after March 2019 if the Debtors' unsupported projections are used. The projections using the bushels per acre and price per bushel that are evidenced by the record only show revenue of $592,000.00 to $736,000 against expenses of $872,000. Therefore, the Debtors have not proven the proposed plan is feasible.

A status conference shall occur on **January 3, 2019, at 1:00 p.m. at** t**he U.S. Bankruptcy Court, Community Trust Building, Second Floor Courtroom, 100 East Vine Street, Lexington, Kentucky.**

# **ATTACHMENT 1**

## **(Projected Expenses)**

**Payment Obligations 2019-2020**

| | | | |
|---|---|---|---|
| Wildcard | 12/1/2019 | $62,500.00 | ECF No. 94, § 3.A |
| John Deere | 12/1/2019 | $43,592.11 | ECF No. 94, Exh. B |
| Class 3B | 12/1/2019 | $36,605.00 | ECF No. 94, § 3.B |
| 2019 Crop Expense | | $540,559.10 | See calculation below |
| 3800 | 3/1/2020 | $106,343.72 | ECF No. 94, § 3.A |
| 3000/8000/5500 | 3/1/2020 | $82,785.00 | ECF No. 94, § 3.A |
| | | $872,384.93 | |

Calculation of anticipated expenses for 2019 crop year:

| | |
|---|---|
| Debtor's estimate (ECF No. 94, Exh. A) | $606,099.00 |
| Less Seed (ECF No. 94, Exh. A) | ($175,000.00) |
| Less Land Leases (See below) | ($125,700.00) |
| | $305,399.00 |
| 10% decrease due to land sale | ($30,539.90) |
| Expected Seed Price per Testimony | $140,000.00 |
| Add Back Land Leases | $125,700.00 |
| | $540,559.10 |

# ATTACHMENT 2

### (Projected Revenue Comparisons)

**Debtors' Projection:  2019 Projected Gross Income Using May 2018 Prices (ECF No. 121)**

| | Acres | Bu/Acr | Total Bushels | Price/Bu | Revenue |
|---|---|---|---|---|---|
| Soybeans | 1,755 | 35.0 | 61,425 | $10.01 | $614,864.25 |
| Corn | 270 | 150.0 | 40,500 | $3.94 | $159,570.00 |
| Combining | | | | | $60,000.00 |
| Trucking | | | | | $48,000.00 |
| | | | | | $882,434.25 |

**Debtors' Projection:  2019 Projected Gross Income Using 2016 Avg Price in Kentucky (Id.)**

| | Acres | Bu/Acr | Total Bushels | Price/Bu | Revenue |
|---|---|---|---|---|---|
| Soybeans | 1,755 | 35.0 | 61,425 | $9.87 | $606,264.75 |
| Corn | 270 | 150.0 | 40,500 | $3.94 | $159,570.00 |
| Combining | | | | | $60,000.00 |
| Trucking | | | | | $48,000.00 |
| | | | | | $873,834.75 |

**2018 Projection Using High Price and High Bushel/Acre per Findings**

| | Acres | Bu/Acr | Total Bushels | Price/Bu | Revenue |
|---|---|---|---|---|---|
| Soybeans | 1,755 | 28.0 | 49,140 | $9.53 | $468,304.20 |
| Corn | 270 | 150.0 | 40,500 | $3.94 | $159,570.00 |
| Combining | | | | | $60,000.00 |
| Trucking | | | | | $48,000.00 |
| | | | | | $735,874.20 |

**2018 Projection Using Low Price and Low Bushel/Acre per Findings**

| | Acres | Bu/Acr | Total Bushels | Price/Bu | Revenue |
|---|---|---|---|---|---|
| Soybeans | 1,755 | 23.5 | 41,243 | $7.87 | $324,578.48 |
| Corn | 270 | 150.0 | 40,500 | $3.94 | $159,570.00 |
| Combining | | | | | $60,000.00 |
| Trucking | | | | | $48,000.00 |
| | | | | | $592,148.48 |

---

**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



Signed By:
*Gregory R. Schaaf*
**Bankruptcy Judge**
Dated: Friday, December 28, 2018
(grs)